UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE KELLY,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 15-06154-KES<br><br>MEMORANDUM OPINION AND ORDER |

    Plaintiff Eugene Kelly ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

## I.

## BACKGROUND

    Plaintiff applied for DIB and SSI on March 16, 2012, alleging the onset of disability on August 27, 2011. Administrative Record ("AR") 195, 197. On August 8, 2012, an ALJ conducted a hearing, at which Plaintiff, who was

represented by counsel, appeared and testified. AR 59-94. On October 16, 2013, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 27-45.

The ALJ found that Plaintiff had the severe impairments of "cervical spine disorder and carpal tunnel syndrome (CTS)." AR 33. Notwithstanding these impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the additional limitations that Plaintiff can use his dominant left hand for "frequent (not constant or repetitive) handling and fingering" and no "forceful gripping or grasping." AR 38.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff would be able to perform his past relevant work as a telemarketer or customer service representative. AR 40. Therefore, the ALJ concluded that Plaintiff is not disabled. AR 41.

## II.
## ISSUES PRESENTED

Plaintiff raises only one issue on appeal. Plaintiff contends that the ALJ improperly discredited Plaintiff's testimony that his neck pain limits his ability to perform "prolonged downward gaze," a postural activity that is required to work at a computer. Plaintiff contends that if the ALJ had included this limitation in Plaintiff's RFC, then the ALJ could not have found Plaintiff capable of working as a telemarketer or customer service representative. See Dkt. 22, Joint Stipulation ("JS") 4.

Plaintiff admits that no medical source has ever "commented upon [his] ability or inability to perform extended downward gaze …." JS 8. Plaintiff points solely to his own testimony as evidence of this functional limitation. Specifically, at the hearing, Plaintiff testified as follows:

Q: Do you think you could do any other jobs that you used to do

|   |   |   |
|---|---|---|
| 1 |  | now? |
| 2 | A: | Absolutely not. |
| 3 | Q: | Tell me why not. |
| 4 | A: | I can't do the sitting, the computer work. I can't do the |
| 5 |  | telephone work. I can't hold it up. I can't hold my neck up. |
| 6 |  | I'm in too much pain to do the work. |
| 7 | Q: | You have problems holding your neck up? Okay. |

JS 5, citing AR 72.

At the hearing, Plaintiff also testified that although he has a computer at home and uses it intermittently for about an hour each day, he has "problems sitting," because he experiences neck pain and "can last a little while, but I'm gonna have to lie down and then get back up …." AR 75. Plaintiff also testified, "I have to lie down all the time…." AR 78. In fact, he testified that he needs to lie down as much as twenty hours of each day. AR 38, citing AR 79.

In addition to testifying at the hearing, Plaintiff completed an Exertion Questionnaire describing how his symptoms prevent him from carrying out normal activities. Plaintiff wrote, "I cannot hold my head up or write; I cannot use computer. Pain, fatigue and weakness prevent me from standing or sitting or walking for extended periods of time." JS 9, citing AR 246. In the same questionnaire, Plaintiff said that he must "lie down after activity" and that while walking, it is "very hard to hold [his] head up …." Id. He also said, "I lie down a lot because cannot stand, walk, sit." AR 248. He has "splints and a neck brace from doctors, but was told not to use them." Id.

Thus, even Plaintiff's own testimony does not reference "prolonged downward gaze;" it references his ability to hold up his head, an exertional task that he would need to perform whenever he is not lying down. The Court, therefore, understands Plaintiff's argument to be that the ALJ erred by failing

to credit Plaintiff's testimony that he cannot maintain a seated position holding up his head sufficiently long to enable him to perform his past relevant work.

Respondent argues that Plaintiff waived any error associated with an alleged "prolonged downward gaze" limitation, because Plaintiff's counsel failed to ask the VE any hypotheticals including such a limitation. JS 12, citing AR 82-86. Alternatively, the ALJ gave legally sufficient reasons for discrediting Plaintiff's testimony. JS 14.

## III.
## DISCUSSION

### A. Plaintiff did not waive his contention that he cannot sit or stand for prolonged periods of time.

"[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal …." Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999). While this Court cannot find any reference in the administrative record to "prolonged downward gaze," as explained above, the Court construes Plaintiff's argument to concern his stated inability to hold up his head (and thus maintain any position other than lying down) for prolonged periods of time. Construed in this manner, the issue was raised to the ALJ and is not waived on appeal.

### B. The ALJ did not err in assessing Plaintiff's credibility.

#### 1. Applicable Law.

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)

(internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at

1284; Thomas v. Barnhart, 278 F.3d 947, 958-59.[1]

## 2. The ALJ's Summary of the Medical Evidence.

The ALJ cited to various medical records confirming that Plaintiff was diagnosed with CTS affecting the grip strength of his left hand. AR 33-34. He first presented with neck pain in 2011, at which time imaging studies were done confirming that Plaintiff had "degenerative joint disease of the cervical spine and left cervical radiculopathy."[2] AR 34. An October 2011 nerve conduction study showed "a moderately severe left C7-8 radiculopathy." Id., citing AR 531. Imaging done in 2012 continued to show mild-to-moderate degenerative changes to Plaintiff's neck and spine. Id., citing AR 336, AR 349.

In July 2012, Dr. Pollis of Alpine Medical Group examined Plaintiff. AR 371. He recorded as Plaintiff's history that he "must sit after standing or walking for ½ hour at a time. He changes position after sitting for 1 hour at a time." Id. He observed Plaintiff to have a normal gait and a full range of motion in his back, but less than a full range of motion in his neck. AR 372-3. He opined that Plaintiff "can stand and walk 6 hours in an 8-hour workday with appropriate breaks, and sit 6 hours in an 8-hour workday with appropriate

---

[1] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. Murphy v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, and therefore is not applicable to the ALJ's decision in this case. Id.

[2] "Radiculopathy refers to a set of conditions in which one or more nerves are affected and do not work properly (a neuropathy). The location of the injury is at the level of the nerve root (radix = root)." See https://en.wikipedia.org/wiki/Radiculopathy.

1  breaks." AR 374.

2  The ALJ also cited the opinion of agency consultant, Dr. Sohn. AR 39.
3  Dr. Sohn reviewed Plaintiff's records, including his claims of neck pain and
4  weakness. AR 121-22. Nevertheless, Dr. Sohn determined that Plaintiff's
5  condition was "not severe enough" to keep Plaintiff from working as a
6  customer service representative. AR 121.

7  Similarly, the ALJ cited the opinion of agency consultant, Dr. Han. AR
8  39. In March 2013, Dr. Han reviewed Plaintiff's records and found him
9  capable of sitting, walking or standing about 6 hours in an 8-hour workday.
10 AR 131-32. He opined that the postural limits found by Dr. Pollis were not
11 supported by medical evidence. AR 132.

### 3. The ALJ's Analysis of Plaintiff's Testimony.

Following the two step process noted above, the ALJ found that while Plaintiff does have cervical radiculopathy, a condition likely to cause neck pain, his testimony that his neck is so weak that he must spend most of each day lying down was only "partially credible." AR 39. The ALJ gave the following five reasons for discounting Plaintiff's testimony concerning the disabling nature of his neck pain: (1) Plaintiff declined surgical intervention, electing instead to pursue only conservative treatment, (2) Plaintiff's testimony is inconsistent with the opinion of Dr. Pollis that Plaintiff can perform sedentary work, (3) Plaintiff's testimony is inconsistent with the opinions of Drs. Sohn and Han that Plaintiff can perform light work, (4) Plaintiff's testimony is inconsistent with his reported daily activities, and (5) Plaintiff's testimony is inconsistent with the recommendation of his treating doctor that he seek work. AR 39.

#### a. Conservative Treatment.

An ALJ may consider evidence of conservative treatment in discounting testimony regarding the severity of an impairment. Parra v. Astrue, 481 F.3d

1  742, 751 (9th Cir. 2007).  "Infrequent, conservative treatment is not indicative
2  of a disabling impairment."  Jimenez v. Colvin, 2013 U.S. Dist. LEXIS 88614,
3  at *14 (C.D. Cal. June 24, 2013) (upholding ALJ's determination that
4  treatment "consisting of Tramadol and over-the-counter Motrin" was
5  conservative) (citing Tommasetti v. Astrue, 533 F.3d 1035, 1039-1040 (9th Cir.
6  2008)).  In assessing the claimant's credibility, "unexplained, or inadequately
7  explained, failure to seek treatment … can cast doubt on the sincerity of the
8  claimant's pain testimony."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).
9       The ALJ explained Plaintiff's history of conservative treatment as
10 follows:

> Although healthcare provides informed the claimant that neck surgery was a possible option, the claimant has elected to pursue conservative treatment in light of the uncertain results of surgical intervention.  Healthcare providers have therefore treated the claimant's cervical spine disorder and overall pain with physical therapy and medications such as Tramadol, Naproxen, Ultram, Hydrocodone, and Ibuprofen.  …  They have also advised the claimant to use other conservative treatments at home, such as warm compresses, warm baths, Bengay, and massage.

20 AR 39, citing AR 277, AR 313 (listing medications), AR 426 (recommending
21 warm compresses and Bengay), AR 500 ("working with physical therapy"),
22 AR 504-05 ("treating conservatively per patient wishes;" "continue
23 conservative management"), AR 506 ("was offered surgery for his back pain
24 but [patient] declined and wished to pursue conservative medical
25 management").
26       The ALJ did not err in characterizing this treatment history for pain
27 management as conservative.  Walter v. Astrue, 2011 U.S. Dist. LEXIS 38179,
28 at *9 (C.D. Cal. Apr. 6, 2011) (finding that ALJ permissibly discounted

plaintiff's credibility based on conservative treatment, which included Vicodin, physical therapy, and a single injection). Care this conservative is not consistent with pain so disabling that Plaintiff must spend approximately twenty hours each day lying down to support his head.

    b. Inconsistency with the Opinions of Drs. Pollis, Sohn, and Han.

 The ALJ's determination that Plaintiff's testimony concerning the disabling effects of his neck pain is inconsistent with the opinions of Drs. Pollis, Sohn, and Han is supported by substantial evidence. Dr. Pollis opined that Plaintiff could "stand and walk 6 hours in an 8-hour workday with appropriate breaks, and sit 6 hours in an 8-hour workday with appropriate breaks." AR 374. Dr. Han also found Plaintiff capable of sitting, walking or standing 6 hours in an 8-hour workday. AR 131-32. Dr. Sohn determined that Plaintiff's condition was "not severe enough" to keep Plaintiff from doing his past relevant work. AR 121. All of these doctors were aware of Plaintiff's claims of severe neck pain, but all of them found that Plaintiff could hold up his head (which is necessary to sit, stand or walk) for at least six hours each day.

 At step four in the sequential analysis, the claimant has the burden of proving he is unable to perform his past relevant work. <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992). Plaintiff failed to provide the ALJ with any medical opinion that he cannot do sedentary work because he cannot hold up his head for sufficiently long periods of time. The ALJ did not err in crediting the medical opinions of Drs. Pollis, Sohn and Han rather than Plaintiff's testimony concerning his inability to hold up his head.

    c. Inconsistency with the Opinion of Dr. Shikuma.

 On April 30, 2012, Plaintiff presented for an "initial visit" with Dr. Shikuma at USC Medical Center. AR 500-02. Plaintiff told Dr. Shikuma that

he had previously been a "security worker" but was "here to get disability." AR 500. Dr. Shikuma noted that Plaintiff had been diagnosed with C 6/7 radiculopathy and that his "pain significantly limits job performance, has paperwork from work documenting limitations." AR 502. Dr. Shikuma said, "counseled [patient] to look for different jobs with less [musculoskeletal] demands – extended disability to 7/20/12." Id.

Thus, Dr. Shikuma did not opine that Plaintiff was unable to do even sedentary work because he could not hold up his head. Rather, after examining Plaintiff, he counseled Plaintiff to look for work with fewer exertional demands than security work. Accordingly, when the ALJ found that Plaintiff's RFC "limited to sedentary work is consistent with [Dr. Shikuma's] recommendation," the ALJ's finding was supported by the record. AR 40.

    d.  Inconsistency with Plaintiff's Daily Activities.

In evaluating a claimant's credibility, the ALJ may consider whether the claimant's daily activities are consistent with total disability. See Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (holding that claimant's ability to take care of personal needs, prepare easy meals, do light housework, and shop for some groceries "may be seen as inconsistent with the presence of a condition which would preclude all work activity"); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (holding that ALJ properly discounted credibility based on activities such as cooking, doing the dishes, going to the store, visiting relatives, and driving); Hayes v. Colvin, No. 13-0995, 2014 WL 2506468, at *4 (D. Or. June 3, 2014) (upholding ALJ's finding that activities of watching television, reading, driving, preparing simple meals, and traveling outside of the state were inconsistent with allegations of disabling pain). This is particularly true where the claimant's regular activities require some of the same physical abilities necessary for employment. See Vertigan v. Halter, 260

F.3d 1044, 1049 (9th Cir. 2001) (noting that claimant's ability to spend substantial part of day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be basis for discrediting allegations); see also Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Here, the ALJ noted that in his Exertion Questionnaire, Plaintiff "admitted that he was able to prepare meals, climb stairs, and complete chores so long as he was able to take intermittent breaks." AR 40, citing AR 246-48. The ALJ's characterization of Plaintiff's testimony is not fully supported by the record. With regard to meal preparation, Plaintiff said, "I try to prepare at least 1 or 2 meals like oatmeal and a fruit, sandwich or beans." AR 246. Regarding climbing stairs, he said, "I can go up 1 to 2 flights, but have begun to have balance issues and use the hand rail." AR 247. He also said, "It is very hard to hold my head up and to come up the stairs to my apartment building when I return" from an outing. AR 246. With regard to chores, Plaintiff said that he uses a feather duster daily, can "wipe [his] sink with a sponge," and can sweep and vacuum "a little," but his neighbor helps him clean the floors. AR 247. He does not drive or do yard work. Id. He can vacuum for "about two minutes or so." AR 248. He finds chores "very fatiguing" and he has to "lie down after activities." Id. He walks each day two blocks to the grocery store leaning on a shopping cart, but he has to lie down afterward. AR 76, AR 246.

From all this testimony, it is clear that Plaintiff spends some time each day holding up his head, which he must do in order to perform any of the above-listed activities. It is not inconsistent with the short duration of these reported activities, however, for Plaintiff to spend most of his day lying down.

Thus, Plaintiff's testimony is that he spends his days lying down with intermittent periods of activity, not that he engages in normal activities with intermittent breaks to lie down. This Court, therefore, finds that the ALJ erred in determining that Plaintiff's reported daily activities are inconsistent with his testimony that he needs to spend most of each day lying down because he cannot hold up his head. This error, however, was harmless, because the ALJ's adverse credibility determination was supported by the other clear and convincing reasons discussed above.

## IV.
## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated: September 13, 2016

*Karen E. Scott*

KAREN E. SCOTT
United States Magistrate Judge